IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

*******

| | |
|---|---|
| SCHILLING LIVESTOCK, INC., KENNETH A. SCHILLING, and LESLEY R. SCHILLING, | CV 14-54-H-CCL |
| Petitioners, | ORDER CONFIRMING ARBITRATION AWARD |
| -v- | |
| UMPQUA BANK, STERLING BANK f/k/a STERLING SAVINGS BANK, | |
| Respondents. | |

*******

Before the Court is a Petition to Vacate Arbitration Award (ECF No. 1) filed by Petitioners Schilling Livestock, Inc., Kenneth A. Schilling, and Lesley R. Schilling ("Schillings"). Having reviewed the briefs and affidavits of the parties,

and all the record in this case, the Court is prepared to rule. The issues raised by the Petition to Vacate the Arbitration Award are:

(1) whether the panel committed misconduct by allowing Sterling's expert to testify as to the meaning of a law (the Gramm-Leech-Bliley Act ("GLBA"), 15 U.S.C. § 78c);

(2) whether the panel should have disallowed Sterling's GLBA defense because Sterling did not plead GLBA as an affirmative defense; and

(3) whether the panel based its decision on Sterling's expert's allegedly false testimony regarding a treatise such that the award was thereby procured by fraud or undue means.

Background

In 2005, Petitioners disposed of part of their ranch in a $5 million "like-kind" property exchange (I.R.C. Section 1031) through Bobby Parks, a registered representative of Fintegra, LLC. Parks was also a dual employee of Sterling Bank. Under an Investment Services Agreement between Fintegra and Sterling, and a

2

Dual Account Executive Agreement between Sterling, Fintegra, and Parks, Fintegra was responsible for securities activities and Sterling was responsible for banking activities. There was no express contract between Sterling Bank and Schillings. After the economic collapse of 2008, Petitioners' investment in the newly-received exchanged property lost a significant percentage of its original value. Petitioners filed an FINRA arbitration action against Fintegra and Parks and sued Sterling in Montana state court. In both forums, Schillings claimed fraud under the Montana Securities Act, breach of fiduciary duty, negligent supervision, negligence, misrepresentation and constructive fraud, breach of contract, and breach of the covenant of good faith and fair dealing. Sterling defended with statute of limitation defenses, also asserting that there was no fiduciary or other special relationship between Sterling and the Schillings. Despite the fact that it was neither a FINRA broker-dealer nor a FINRA member, Sterling agreed to be joined in the arbitration action in 2012. Schillings' state action was dismissed. In 2013, Petitioners dismissed Bobby Parks after he filed for bankruptcy. The FINRA arbitration hearing with Fintegra and Sterling was set down for January

2014. Petitioners settled with Fintegra a few days before the hearing, leaving only Sterling Bank in the arbitration. The hearing was conducted over the course of 11 days in January and May 2014. The panel denied Sterling's motion to dismiss on statute of limitations grounds. In a written decision dated June 2, 2014, the arbitration panel denied Petitioners' claims against Sterling Bank, citing the Interagency Statement on Retail Sales of Nondeposit Investment Products (the "Interagency Statement") by federal bank regulators[1], the 2014 FDIC Compliance Manual (Doc. 23-10), the Investment Services Agreement (the "ISA") between Fintegra and Sterling (Doc. 23-2), the Dual Account Agreement with Mr. Parks, and the GLBA (Doc. 23-3).

Legal Standard

Judicial review of arbitration awards is highly deferential. *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 414 (9th Cir. 2011). A party moving to

---

[1] Issued on February 15, 1994, the Interagency Statement was issued by the Federal Reserve Board, the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, and the Office of Thrift Supervision. (Doc. 22, Resp. Memorandum in Opp. at 8 n.2.)

vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation of the award is a high hurdle. *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) (motion for vacatur "must clear a high hurdle," because showing that the arbitrator committed "a serious error" is insufficient).

Vacatur of arbitration awards is permitted under limited circumstances by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption [by] the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). These grounds provided by the FAA are exclusive. *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1338 (9th Cir. 1986). The Court's review is limited and the "standards are highly deferential to the arbitrator." *Johnson v. Wells Fargo Home Mortg. Inc.*, 635 F.3d

5

401, 414 (9th Cir. 2011). A party seeking vacatur bears the burden of establishing the basis for vacating the arbitration award. *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

One statutory ground allowing vacatur is "where the arbitrators exceeded their powers. . . ." 9 U.S.C. § 10(a)(4). When an arbitrator has "demonstrated a manifest disregard for law[,]" a court may find sufficient ground to vacate an arbitration award. *Johnson*, 635 F.3d at 414 (citation omitted).[2] However, an erroneous interpretation of the law will not suffice. The party attempting to vacate the arbitration award must show that the arbitrator *understood* and *correctly stated* the law but then ignored it. *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (quoting *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007)).

---

[2] The parties disagree whether the manifest disregard standard is still a valid reason for vacating an arbitration award, after *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008) (holding the FAA sets forth exclusive grounds for judicial review of arbitration awards). The Ninth Circuit, however, has held that the manifest disregard standard survived *Hall Street*. *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009).

Obviously, the law allegedly ignored by the arbitrator must be "well-defined, explicit, and clearly applicable." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007). Even a gross error of law "no matter how obvious or outrageous" will not support vacating an award unless there is evidence "reliably demonstrating" that the arbitrator's error was accompanied by "knowledge of the error of that action and/or the intention to nullify the law or an awareness that [the arbitrator] was doing so." *Collins v. D.R. Horton, Inc.*, 361 F.Supp.2d 1085, 1100 (D. Ariz. 2005). The "risk that arbitrators may construe the governing law imperfectly . . . or may make errors with respect to the evidence on which they base their rulings, is a risk that every party to arbitration assumes." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 1003 (9th Cir. 2003).

Vacatur based upon fraud requires a showing that the fraud was "(1) not discoverable upon the exercise of due diligence prior to the arbitration, (2) materially related to an issue in the arbitration, and (3) established by clear and convincing evidence." *Lafarge*, 791 F.2d at 1339 (citing *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1297 (9th Cir. 1982)). The same test applies to the

"undue means" prong, which refers to conduct that is not merely unfair, but conduct that is immoral, if not illegal. *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403-04 (9th Cir. 1992).

Analysis

*Arbitrators' Misconduct (Allowing Expert to Give Legal Opinion)*

It can hardly be said that the arbitrators committed misconduct or any other misbehavior in allowing Respondents' expert to opine as a rebuttal witness regarding the application of the GLBA networking exception to Sterling Bank.[3] A district court possesses discretion to admit or exclude such expert testimony under the rules of civil procedure, but an arbitrator is not bound by the rules of civil procedure and receives evidence quite liberally. *See FINRA-ARB2014,* Rule 12604(a). After all, Petitioners themselves opened the door by eliciting legal

---

[3] The networking exception provided by section 1001 of GLBA, 15 U.S.C. § 78c(a)(4)(B)(I), provides that when a bank fulfills the statute's exception criteria, the bank "shall not be considered to be a broker" when it enters into third-party arrangements to offer brokerage services on or off bank premises.

opinions from their own expert, Paul Meyer, who testified that Sterling stood in the shoes of Fintegra and owed Schillings duties similar to those of a FINRA broker-dealer. (Doc. 23-6 at 10, 1/15/14 TR 638:5-24.) This contention is without merit.

*Undue Means (Respondents' Failure to State Affirmative Defense)*

Petitioners assert that the arbitration award reflected undue means by Respondents' alleged failure to assert the networking exception as an affirmative defense. This contention is also without merit. First, even if this arbitration were governed by the rules of civil procedure, which it was not, this is not a traditional affirmative defense that would be required in civil litigation. Second, while an arbitration panel *may* bar a defense if it was known but withheld at the time of the party's filing of the answer, in this case there is no evidence that Respondents knew of the GLBA networking exception at the time they filed their answer. Third, Respondents reserved the right to assert any defense that became apparent during discovery. *See* Sterling's Answer to Arbitration Claim, Doc. 6-3 at 10. The GLBA networking exception apparently did come to light through discovery,

and in fact one week before the May, 2014, arbitration hearing Schillings' own counsel provided to Sterling's counsel a copy of a discovery document (a portion of the FDIC Compliance Manual) that explained the GLBA networking exception. (Doc. 23-10 at 1-2.) Not only did Schillings have notice of the networking exception before the arbitration hearing but also the arbitration panel offered to take further briefing from the parties on the issue. However, Schillings' counsel declined to brief it,[4] preferring to proceed to the panel's decision. (Doc. 23-14; 5/24/14 TR 126:10-13.) Schillings' argument that they could not be expected to guess that a statutory defense would be advanced by opposing counsel fails in the face of the multiple documents governing the transaction (the FDIC Compliance Manual and the Investment Services Agreement) that specifically cited the GLBA networking exception. Almost a month before the May 24, 2014, arbitration

---

[4] On the 11th day of the arbitration hearing, Schillings' counsel informed the arbitration panel that if the arbitration panel wanted to take into account this federal law, mere briefing would not be adequate. Instead, counsel suggested that the arbitration process go back to discovery followed by another arbitration hearing. Clearly, the arbitration panel decided that Schillings' counsel could not forbid them from taking into account relevant federal law. Furthermore, the arbitrators heard Schillings' counsel state that he did not want to brief the issue. (Doc. 23-14, 5/24/14 TR 126:5-14.)

hearing, Schilling's counsel received Sterling's brief, which stated that "Mr. Bley will testify that, contrary to Mr. Meyer's testimony, a commercial or community bank like Sterling that enters into a third-party agreement with a FINRA broker-dealer to enable the sale of non-deposit investment products to its customers does not take on the obligations of a FINRA broker-dealer." (Doc. 23-7 at 5.) Not only that, but the GLBA statutory exception was cited in discovery, so the fact of its existence was certainly discoverable by Petitioners' counsel with due diligence. (*See* Doc. 23-2 at 5, Investment Services Agreement, § 3.8.) Petitioners' studious avoidance of a perfectly obvious defense, followed by the claim of surprise when the defense was so predictably presented, does not persuade the Court that Petitioners did not receive fair notice of the argument. Counsel's reply brief lifts this controversy into the realm of hyperbole:

> Furthermore, *nowhere* can it be found in any document *ever created in the history of the world*, as far as the Schillings are aware, that meeting the "networking exception" under the GLBA does anything but exempt the bank from having to register as a broker-dealer.

(Doc. 28, Petitioner's Reply Brief at 7.) Besides the fact that this narrow reading

11

of the statutory exception is plainly incorrect,[5] the Schillings fail abjectly in *their duty* to present a *prima facie* claim that established from whence Sterling's contractual and common law duties arose, if not from the bank's only relationship to the transaction in question (which relationship is, of course, exempted from liability by the federal third-party networking exception).

The Petitioners' real conundrum is not that they did not have notice of the third-party networking exception that exempts Sterling from being held liable for Fintegra's errors, but that they cannot define the Bank's contractual and common law duties without resort to a derivative broker-liability theory. The Court finds also that Schillings had sufficient ability to discover the existence of the networking exception and that, with the exercise of due diligence, they could have

---

[5] This third-party networking exception goes well beyond merely exempting the bank from registration as a broker, because the statute states flatly that "[a] bank *shall not be considered to be a broker*...." 15 U.S.C. § 78c(a)(4)(B) (emphasis added). The third-party arrangement between Sterling and Fintegra specifically required Fintegra to meet all rules and regulations of the SEC, the NASD, and state securities commissions, federal and state banking laws and regulations, etc., and especially required Fintegra to "comply with any provisions that allow the Bank to be exempt *from being regulated* as a securities broker, as set forth Section 3(a)(4)(B)(I) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78c(a)(4)(B)(I)." (Doc. 23-2, Addendum to Investment Services Agreement at 5 (emphasis added).)

challenged its application. All they had to do was read the FDIC Compliance Manual (Doc. 23-10) or Fintegra and Sterling's Investment Services Agreement, § 3.8 (Doc. 23-2), and look up the statutory citation therein, and think about how that statutory provision might apply in their case and how they might challenge its application. It was an obvious impediment to their case. The Court finds Petitioners' claim of undue means based on lack of notice plainly to be without merit.

*Fraud or Undue Means Via Alleged False Testimony of Expert*

As to the allegedly false testimony given by Mr. Bley, this Court finds that he did not give false testimony.[6] What is clear in hindsight is that the question posed by Petitioners' counsel was ambiguous and open to interpretation as to its

---

[6] Q. "Are you aware of any legal authorities–law journal articles, broker dealer publications, bank publications that are scholarly in nature that have come out and said that if a bank enters into a networking arrangement with a third-party broker dealer, then they can't be held liable *in a situation that we have here today*?"
    A. "Melanie Fein Bank Securities' Activities.
    Q. "And did you bring a copy of that with you today?
    A. "No. It's a book about that size. It's a reference manual. Incidentally, that reference manual didn't reference any case law either. But it did reference–it did reference, specifically, *the networking exception*."
(Doc. 23-11 at 80-81, TR 5/23/14 85:12-86:1 (emphasis supplied).)

scope. Mr. Bley's answer was correct as it related to the topic then being discussed during his testimony, which was the impact of the networking exception, 15 U.S.C. § 78c(a)(4)(B)(I), upon Sterling's liability under the Securities Exchange Act of 1934. Only if the question was meant to encompass all of the claimant's common law and contract claims could Bley's answer have been incorrect. Any misunderstanding about this testimony results from the ambiguity inherent in counsel's question and also from Petitioners' subsequent attempt to stretch the true meaning of the Bley's answer into a falsehood. It is reasonably apparent from the transcript that the panel could have and probably did understand and interpret Mr. Bley's testimony such that his testimony was true and correct. Thus, there can be no fraud, certainly not by clear and convincing evidence. In addition, the Court finds that the result of the arbitration would not have been different had that particular question not been asked and answered, *see A.G. Edwards & Sons*, 967 F.2d at 1403 (citing the causation requirement). In fact, the federal law would have had to be applied by the arbitration panel whether or not any expert testified, and therefore this ground for vacatur is without merit.

14

None of the requirements for justifying a vacatur can be met in this case. During the arbitration, Petitioners had ample time to prepare and present their case but failed to prove that Sterling Bank breached any contract or duty owed to Petitioners. Petitioners also failed to prove that federal law, 15 U.S.C. § 78c(a)(4)(B)(i), did not shield Sterling Bank from their claims. As to the instant petition for vacatur, the Schillings have failed to surmount the high bar that requires them to show that the arbitration award was procured by fraud or undue means, that the award was tainted by the arbitrators' refusal to hear evidence pertinent and material to the controversy or other arbitrator misbehavior resulting in prejudice, or that the award was issued in manifest disregard for the law. *See* 9 U.S.C. § 10(a).

<u>Conclusion</u>

Upon review of this record, the Court finds that Schillings fail to meet their burden to show that the arbitration award should be vacated. There is no gross error on the face of the award nor any evidence of intent to disregard the law. Schillings' complaints regarding the arbitration process do not rise to the level of

15

demonstrating clear and convincing evidence of fraud, arbitrator misbehavior, or the kind of immoral conduct that procures an invalid decision by undue means. Thus, for the above-stated reasons,

IT IS HEREBY ORDERED that Schillings' Petition to Vacate Arbitration Award (ECF No. 1) is DENIED. The Arbitration Award (FINRA Case Number 11-03733) is hereby CONFIRMED. Let judgment enter.

Done and Dated this 1st day of December, 2015.

_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE